UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LUIS MANUEL LOPEZ-OCHOA,

                Petitioner,                           Case No. 1:19-cv-8

v.                                           Honorable Robert J. Jonker

RANDEE REWERTS,

                Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner Luis Manuel Lopez-Ochoa is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC I), Mich. Comp. Laws § 750.520b(1)(f). On July 20, 2016, the court sentenced Petitioner to two concurrent prison terms of 15 to 50 years.

Petitioner appealed his convictions to the Michigan Court of Appeals.  The facts underlying Petitioner's conviction, as taken from the opinion of the Michigan Court of Appeals, are as follows:

> This case involves a sexual assault of an adult woman in her home.  During the evening of February 14, 2016, the 61-year-old victim, her roommate, Victor Cervantes, and Cervantes's friend, defendant, were drinking alcohol at the victim's apartment in Grand Rapids, Michigan.  The group was gathered around the dining room table of the home drinking beer and liquor.  The victim's ex-husband, Craig, was also home, but he was sitting in the adjacent living room watching television and drinking beer; he was not participating in the group's gathering at the dining room table.  At some point in the evening, Craig asked Cervantes to go to the store and get some tobacco.  When Cervantes left, defendant asked the victim to help him work a radio in Cervantes's bedroom.
>
> When the victim entered the bedroom, defendant closed the bedroom door, grabbed the victim by her left arm, and threw her face down on the bed.  Defendant ripped the victim's clothes off and sexually assaulted her twice.  He also forcibly groped the victim's left breast.  The victim told defendant to stop, but he did not stop until he was finished.
>
> Craig did not see or hear the assault, but he went to look for the victim after noticing that she was gone.  He found the victim lying on the floor in Cervantes's bedroom with her pants and underwear down.  She was crying, and she said, "He raped me."  Defendant then fled the house.  Craig went downstairs and told a neighbor to call 911.  Police officers arrived shortly thereafter.  When police arrived, they described the victim's demeanor as "distraught."  She told police that defendant sexually assaulted her.  Craig gave police officers defendant's first name, a description of defendant, and a description of defendant's vehicle.  Police found defendant at a nearby farm where he worked and lived, and they arrested him. Police officers transported the victim to the YWCA where she met with Alison

2

Edidin, a sexual assault nurse examiner. Edidin did a physical examination of the victim. She noted multiple lacerations and tears on the victim's privates that were bleeding. She noted that the "whole area was an abrasion" and that the victim was in extreme pain during the examination. Edidin also noted pain and redness on the victim's left breast as well as bruising on the victim's left forearm.

*People v. Lopez-Ochoa*, No. 335302, 2017 WL 5759996, at *1 (Mich. Ct. App. Nov. 28, 2017).

Petitioner does not contest the court of appeals' summary of the case.

In an unpublished opinion issued on November 28, 2017, the court of appeals rejected all appellate grounds and affirmed the convictions and sentences. Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same grounds presented to the court of appeals. The supreme court denied leave to appeal on May 1, 2018.

On December 27, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on December 27, 2018. (Pet., ECF No. 1, PageID.14.)

The petition raises the same three grounds in his petition as he presented to the Michigan appellate courts:

I.  TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO: (1) IMPEACH [THE VICTIM] WITH HER PRELIMINAR EXAMINATION TESTIMONY, AND; (2) FAILED TO OBJECT TO THE PROSECUTOR'S REPEATED REFERENCES TO APPELLANT'S INVOCATION OF HIS FIFTH AMENDMENT RIGHT TO REMAIN SILENT WHEN REFUSING TO SPEAK WITH POLICE.

II. OFFENSE VARIABLES (OV'S) 3 AND 4 WERE INCORRECTLY SCORED WHICH RESULTED IN A HIGHER GUIDELINE RANGE OF WHICH [PETITIONER] WAS SENTENCED UNDER.

III. THE COURT'S IMPOSITION OF A 20% LATE FEE UNDER MCL 600.4803(1) CONSTITUTES AN IMPERMISSIBLE MEANS OF ENFORCEMENT THAT EXPOSES CRIMINAL DEFENDANTS TO MORE SEVERE COLLECTIONS PRACTICES THAN ORDINARY CIVIL DEFENDANTS.

(Pet., ECF No. 1, PageID.6-8.)

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Ineffective Assistance of Trial Counsel

In his first ground for habeas relief, Petitioner argues that trial counsel was ineffective in two ways. First, he contends, counsel was ineffective in failing to impeach the victim with her preliminary-examination testimony. The victim testified at the preliminary examination that, before they went to the bedroom, Petitioner had tried to kiss her on the mouth and had choked her, though she indicated that she had believed Petitioner was joking around. At trial, in contrast,

the victim denied that Petitioner had attempted to touch her before they were in the bedroom. In his second claim of ineffective assistance of counsel, Petitioner contends that trial counsel was ineffective in failing to object to the prosecutor's repeated references to Petitioner's invocation of his right to remain silent.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen*

*v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

## A.     Failure to Impeach the Victim

Applying *Strickland*, the Michigan Court of Appeals rejected Petitioner's argument that counsel rendered ineffective assistance in failing to impeach the victim with her preliminary examination testimony:

> In order to find merit in a defendant's claim of ineffective assistance of counsel, the defendant must prove: (1) that the attorney made an error, and (2) that the error was prejudicial to defendant. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 311, 314; 521 NW2d 797 (1994). That is, first, defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). We must analyze the issue with a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, and require[] that the defendant overcome the presumption that the challenged action or inaction might be considered sound trial strategy. *People v Leblanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Decisions about whether to question a witness are presumed to be matters of trial strategy. *Russell*, 297 Mich App at 716. Second, defendant must show that, but for trial counsel's deficient performance, a different result would have been reasonably probable. *Id.* at 715-716.

> At the preliminary examination, the victim testified that before she went into Cervantes's room with defendant, defendant tried to kiss her on the mouth while they were still sitting at the dining room table, but she said "no." She then testified that defendant choked her, but she thought he was "jok[ing] around" and that she thought defendant was "playing with [her]." Then, at trial, the victim testified that defendant did not touch her or try to make sexual advances toward her before asking her to help him with the radio in Cervantes's room.

> Defense counsel made the decision not to impeach the victim regarding her inconsistent statements. Had she done so, counsel ran the risk of shedding a negative light on defendant. We conclude that defendant has not overcome the

7

presumption that counsel's decision not to impeach the witness was sound trial strategy. And therefore, defendant has not demonstrated that counsel's performance fell below an objective standard of reasonableness. *Id.*

Assuming for the sake of argument that counsel's failure to impeach the victim did fall below an objective standard of reasonableness, we conclude that defendant has not demonstrated that but for defense counsel's deficient performance, a different result would have been reasonably probable. *Id.* Even if the victim was impeached based on her statements about what happened before she went into Cervantes's room with defendant, the jury heard the rest of the victim's testimony that defendant grabbed her by the arm, forcibly groped her, and that the assault was painful. All of this was supported by Edidin's testimony.

Additionally, to the extent that the impeachment would have supported the defense theory that the sexual acts were consensual, the evidence clearly demonstrated that the victim withdrew any possible consent. Moreover, Cervantes testified that the victim told him that she thought defendant was "nice" and "cute." He also testified that he witnessed the victim and defendant "touching each other" on their "private parts" multiple times that night before the victim followed defendant into Cervantes's bedroom. The jury heard Cervantes's testimony, and it presumably chose to believe the victim's account of the events. Accordingly, we conclude that, even if defense counsel committed an error, defendant has not demonstrated that but for counsel's deficient performance, a different result would have been reasonably probable. *Id.* Therefore, we hold that counsel was not ineffective.

*Lopez-Ochoa*, 2017 WL 5759996, at *1-2.

Petitioner does not dispute the court of appeals' description of the evidence at trial, whether found in the description of the facts or in the analysis of Petitioner's claim of ineffective assistance, including the court's description of the substance of the victim's testimony at the preliminary examination and at trial. As earlier discussed, the factual findings of state appellate courts are entitled to a presumption of correctness, which a petitioner must overcome by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546. Because Petitioner does not challenge the findings, they must be accepted as true.

Accepting those facts, the state court's determination that counsel was not ineffective represented a reasonable application of Supreme Court precedent. As the state court recognized, counsel's decision to not impeach the victim is strongly presumed to be strategic, *see*

*Strickland*, 466 U.S. at 689.  By attempting to impeach the victim with her prior testimony that Petitioner had tried to kiss her and choke her before they went to the bedroom, counsel risked a substantial harm to Petitioner's case, by exposing the jury to information about other unwanted and aggressive conduct by Petitioner.  In addition, as the state court recognized, the victim's statements about conduct preceding the parties going to the bedroom did not tend to prove that the victim consented to the sexual assault in the bedroom.  To the contrary, the victim at all times maintained that Petitioner's advances were unwanted.  Petitioner fails even to attempt to overcome the presumption that counsel's decision was strategic.

Further, the court of appeals correctly recognized that, even if Petitioner could demonstrate that counsel's performance fell short of objective reasonableness, he could not demonstrate that any error by counsel resulted in prejudice to the defense.  Despite the fact that Petitioner's friend described consensual, sexually charged conduct between the victim and Petitioner, the jury chose to believe the victim's account that Petitioner had violently raped her, which was corroborated by the testimony of multiple witnesses to her demeanor shortly after the assault and by the nurse examiner's testimony concerning the victim's physical injuries.  It is highly unlikely, therefore, that not impeaching the victim about testimony about nonconsensual conduct by Petitioner that was not central to the victim's accusation of forcible rape resulted in prejudice to Petitioner's defense.

Petitioner therefore fails to show either that counsel's performance was unreasonable or that he was prejudiced by that performance.  Even more certainly, Petitioner fails overcome the double deference owed to the state court's rejection of his first claim of ineffective assistance of counsel.

B.    Failure to Object to Mentions of Post-Miranda Silence and Request for Counsel

Petitioner next argues that his trial attorney was ineffective in failing to object to three instances in which witnesses or the prosecutor referred to his invocation of his right to counsel and to remain silent.  The Michigan Court of Appeals addressed the issue at length:

> Defendant next asserts that counsel was ineffective for failing to object to the prosecution's statements in the jury's presence about defendant's asserting his right to remain silent during police questioning.  However, nowhere in defendant's brief on appeal did defendant develop his argument in this regard.  Rather, defendant seems to couch his argument in the area of prosecutorial misconduct.  As we have recognized many times:
>
>> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. . . . Failure to brief a question on appeal is tantamount to abandoning it. [*People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation omitted).]
>
> Therefore, because defendant merely announced an error regarding ineffective assistance of counsel for failure to object to the statements regarding his assertion of his right to remain silent, but he failed to brief the question on appeal, we conclude that he abandoned the issue.
>
> However, we will address the issue of prosecutorial misconduct, as defendant did brief that issue.  To begin, in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court outlined the rule pursuant to which law enforcement officers must advise a suspect of certain rights before custodial interrogation.  Those rights include the right to remain silent and the right to a retained or appointed attorney to be present during questioning. *Id.* at 467-468, 470.  In this case, before questioning defendant, police officers advised him of his *Miranda* rights written in Spanish and clarified orally in Spanish.  Defendant asserted his right to have an attorney present during questioning.[]
>
> "[T]o preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction."  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).  Here, defendant did not object to any of the alleged instances of prosecutorial misconduct, nor did he request a curative instruction.  Therefore, the issue is unpreserved for appellate review.  When there was no contemporaneous objection or request for a curative instruction, appellate review of claims of prosecutorial misconduct is limited to ascertaining whether there was plain error that affected substantial rights. *People v Brown*, 279

Mich App 116, 134; 755 NW2d 664 (2008). Plain error requires showing that (1) error occurred, (2) the error was clear or obvious, and (3) the error affected defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The third requirement generally requires showing that the error affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763. Reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id.*

The United States and Michigan Constitutions guarantee defendant's right to a fair trial. US Const, Am VI, XIV; Const 1963, art 1, § 20; *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). The test for prosecutorial misconduct is whether defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). The propriety of a prosecutor's remarks depends on all the facts of the case. *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). A reviewing court cannot find error requiring reversal when a curative instruction could have alleviated any prejudicial effect. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

"[I]n general, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution." *People v Shafier*, 483 Mich 205, 212-213; 768 NW2d 305 (2009), citing *Wainwright v Greenfield*, 474 US 284, 290-291; 106 S Ct 634; 88 L Ed 2d 623 (1986); *Doyle v Ohio*, 426 US 610, 618-620; 96 S Ct 2240; 49 L Ed 2d 91 (1976). "A reference to a defendant's post-arrest, post-*Miranda* silence generally constitutes a *Doyle* violation unless the reference was so minimal that 'silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference.'" *Shafier*, 483 Mich at 214-215, quoting *Greer v Miller*, 483 US 756, 764-765; 107 S Ct 3102; 97 L Ed 2d 618 (1987).

In this case, defendant claims that the prosecution committed misconduct by speaking in the jury's presence about defendant's asserting his right to remain silent during police questioning. Defendant claims that the prosecution committed misconduct three times: first, during opening statements; second, during direct examination of Detective Ort; and third, during cross-examination of Detective Ort. We disagree.

Regarding the first statement, we conclude that the prosecution did not commit misconduct because any prejudicial effect of the statements could have been alleviated by a curative instruction. *Unger*, 278 Mich App at 235. During opening statements, the prosecution said, "[T]he defendant leaves. I believe it's two days later, that the police department is able to track him down . . . . Detective

Ort, along with a Spanish[-]speaking officer attempt to interview [defendant]. He declines, which is his—he has every right to do." This reference to defendant's post-arrest, post-*Miranda* silence violated defendant's right to due process under the Fourteenth Amendment of the United States Constitution. *Shafier*, 483 Mich at 212-213. However, we conclude that a curative instruction could have alleviated any prejudicial effect by informing the jury that the reference to defendant's silence was not submitted to it as evidence from which it was allowed to draw any permissible inference. *See Shafier*, 483 Mich at 214-215; *see also Greer*, 483 US at 759, 764-765.

Regarding the second statement, the prosecution asked Detective Ort an open-ended question about his investigative efforts: "Where did you meet with the defendant at?" In response to this question, Detective Ort testified that he interviewed defendant with the assistance of a Spanish-speaking police officer. He testified that defendant was given a written copy of his *Miranda* warnings in Spanish. He also stated that Officer Garza clarified his rights in Spanish, including his right to an attorney. Detective Ort testified that defendant then chose not to speak to them without his attorney present. The prosecutor then said, "[W]hich is his right to do." Detective Ort responded stating, "[A]bsolutely." The prosecution did not elicit any additional follow-up questions regarding defendant's refusal to speak with Detective Ort. We conclude that the prosecution did not commit misconduct because the prosecution's question was "aimed at eliciting testimony about [Detective Ort's] investigative efforts, not about . . . defendant's refusal of a police interview." *People v Dennis*, 464 Mich 567, 575; 628 NW2d 502 (2001).

Regarding the third incident, Detective Ort made a statement during cross-examination that "normally" in a case like defendant's he would obtain a statement from the suspect. However, he stated that he did not obtain a statement from defendant in this case because defendant would not talk to him without an attorney present. Defendant cannot attribute such statements to the prosecution as prosecutorial misconduct because they were not elicited by the prosecution—they were elicited by defendant's counsel on cross-examination.

This case is distinguishable from *Shafier*, in which the prosecution repeatedly elicited testimony about defendant's silence and highlighted the importance of the silence throughout the trial. In this case, the prosecution did not specifically elicit testimony from Detective Ort regarding defendant's silence, and it did not follow up with any additional questions about defendant's silence. Nor did the prosecution highlight the importance of defendant's silence. The first statement could have been cured by the trial court issuing a curative instruction. The second statement was provided by Detective Ort in response to an open-ended question about Detective Ort's investigative efforts. The third statement was elicited by defendant's own counsel on cross-examination. Accordingly, we conclude that defendant has not demonstrated plain error. *Carines*, 460 Mich at 763.

Defendant has also not demonstrated that any error affected his substantial rights. The victim testified that defendant sexually assaulted her and that it caused her pain. Edidin testified regarding the extent of the victim's injuries. Defendant has not shown that any possible error in referring to his silence affected the outcome of the lower court proceedings in light of the evidence supporting the assault, let alone "resulted in the conviction of an actually innocent defendant" or "affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

*Lopez-Ochoa*, 2017 WL 5759996, at *2-5 (footnote omitted).

## 1. Procedural Default

The court of appeals thus concluded Petitioner procedurally defaulted his second claim of ineffective assistance of counsel by failing to adequately brief the issue, as required by the Michigan appellate courts. The court of appeals therefore reviewed the claim solely for plain error. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional

claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

In *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), the Supreme Court reaffirmed that, in reviewing the basis for a summary appellate order of affirmance, the habeas court should apply the doctrine of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and "look through" an unexplained appellate order to the last reasoned decision of the state court.  *Id.* at 1193-94.  Here, the Michigan Supreme Court issued an unexplained summary order denying leave to appeal.  As a result, the opinion of the Michigan Court of Appeals constitutes the last reasoned determination of Petitioner's claim.  *Wilson*, 138 S. Ct. at 1193-94.

As previously discussed, the Michigan Court of Appeals expressly applied its procedural rule requiring that appellant do more than merely recite a claim in his appellate brief to obtain merits consideration of the claim on appeal.  A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Although there may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *see Lee v. Kemna*, 534 U.S. 362, 376 (2002), this case does not fall within that "limited category."  *Id.*

In two relatively recent decisions, *Beard v. Kindler*, 558 U.S. 53 (2009), and *Walker v. Martin*, 562 U.S. 307 (2011), the Supreme Court held that, "a discretionary state procedural rule

can serve as an adequate ground to bar federal habeas review," because it can be considered "firmly established." *Kindler*, 558 U.S. at 60. Extending the precedent it set in *Kindler*, the *Martin* Court emphasized the practical importance of "preserving the flexibility" of states' discretionary procedural rules. *See Martin*, 562 U.S. at 311. Thus, the Supreme Court held in *Martin* that even wholly discretionary state procedural rules may constitute adequate state grounds for foreclosing federal review of a habeas claim. *See id.* at 316-17. *See also Stone v. Moore*, 644 F.3d 342, 345-46 (6th Cir. 2011) (applying *Kindler* and *Martin* to Ohio discretionary rule on delayed applications for leave to appeal).

Thereafter, in *Johnson v. Lee*, 136 S. Ct. 1802 (2016), the Supreme Court drove home the point when it rejected the Ninth Circuit's attempt to distinguish *Kindler* and *Martin*, by suggesting that the California procedural rule barring collateral review of claims that could have been raised on direct appeal was a mandatory, as opposed to discretionary, rule. In such circumstances, the Ninth Circuit had reasoned, any deviation from the application of the rule, demonstrated that the rule was not adequate, because it was not regularly followed. The Supreme Court reversed, holding that the reasoning of *Kindler* and *Martin* controlled, and that even wholly discretionary rules could be adequate and independent for purposes of procedural default. *Id.* at 1806-07.

The rule applied here by the Michigan Court of Appeals was adequate and independent under these authorities. Michigan appellate courts routinely hold that, unless an appellant provides facts, citations, and arguments in support of a claim, it will be deemed abandoned. *People v. Coy*, 669 N.W.2d 831, 843 (Mich. Ct. App. 2003). The rule requiring development of appellate issues was well-established, and therefore adequate, at the time of Petitioner's trial. *See, e.g.*, Mich. Ct. R. 7.212(C)(6)-(7) (setting forth requirements for appellate

briefs, including the requirements of sufficient factual descriptions to understand the controversy and question involved and for arguments including supporting authorities); *Coy*, 669 N.W.2d at 843; *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995); *Froling v. Carpenter*, 512 N.W.2d 6, 9 (Mich. Ct. App. 1993).

Moreover, Petitioner makes no effort to show that the court of appeals was wrong about its conclusion that Petitioner failed to develop the issue, and therefore wrongly applied the rule in his case. In the absence of a challenge from Petitioner, the state court's determination that Petitioner failed to comply with the independent and adequate state rule requiring briefing must be accepted as true. 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546 (presumption of correctness applies to factual determinations of state appellate courts, as well as to such determinations of trial courts).

In sum, the Michigan Court of Appeals properly held that Petitioner failed to comply with the state's independent and adequate state procedural rule, *i.e.*, developing his issue on appeal, and therefore defaulted this claim in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011; *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010); *Lancaster*, 324 F.3d at 437; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

## 2.    Lack of Cause and Prejudice to Excuse Default

Where a petitioner has procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377

F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

### a.   No Cause

Accordingly, review by this court is barred unless Petitioner can show cause and prejudice or actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray*, 477 U.S. at 485. Petitioner makes no attempt to allege cause that would excuse his failure to develop his claim in the Michigan Court of Appeals. While the ineffective assistance of appellate counsel may, in appropriate circumstances, serve as cause to excuse a procedural default, a claim of ineffective assistance of appellate counsel must itself be properly exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell*, 274 F.3d at 349 (6th Cir. 2001); *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001). Petitioner, however, never raised or exhausted a claim of ineffective assistance of appellate counsel in the state courts. As a result, a claim of ineffective assistance of appellate counsel cannot serve as cause to excuse Petitioner's default.

Further, Petitioner has made no attempt to suggest any other independent cause that would excuse his default. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

### b.   No Prejudice

Regardless, even if Petitioner could show cause excusing his default, he cannot show actual prejudice arising from that default. Prejudice requires the Petitioner to show that the

alleged error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). "'[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of Petitioner's guilt and a lack of evidence to support his claim.'" *Perkins*, 58 F.3d at 219 (quoting *Rust*, 17 F.3d at 161-62).

Here, the court of appeals found that Petitioner's silence was mentioned three times: once during opening arguments; a second time during Detective Ort's direct examination; and a third time during defense counsel's cross-examination of Detective Ort. As the court noted, the prosecutor did not attempt to use Petitioner's silence as evidence of guilt, and he did not mention Petitioner's silence during closing argument. Indeed, after mentioning in opening argument that Petitioner had declined to be interviewed by the police, the prosecutor immediately added "which is his – he has every right to do." *Lopez-Ochoa*, 2017 WL 5759996, at *4. Similarly, when Detective Ort mentioned that Petitioner refused to speak with officers after he had been read his rights, the prosecutor immediately stated, "[W]hich is his right to do," and Detective Ort responded, "[A]bsolutely." *Id.* In the final instance, Detective Ort mentioned during cross-examination that he normally would obtain a statement from the suspect, but he had not done so in the instant case because Petitioner would not talk with him without an attorney present.

Under these circumstances, it is apparent that the prosecutor had no intention of using Petitioner's silence as evidence against him, given that the prosecutor himself cautioned the jury on the first two occasions that Petitioner had the right to refuse to speak with the detectives. That caution minimized the impact of the references to Petitioner's silence. In addition, the evidence supporting the conviction was strong. The victim herself testified about the specifics of the attack. The victim's ex-husband found the victim immediately after the attack, when she was

lying on the floor with her pants and her underwear down, crying and saying that Petitioner had raped her. Petitioner fled the scene. The police were called immediately, while the victim was still distraught. The victim then was examined by a sexual assault nurse examiner, who found that she had suffered multiple lacerations and tears to her genital area, which were bleeding and painful. And, consistent with the victim's testimony that Petitioner had grabbed her by the arm and forcibly groped her breast, the nurse noted bruises on the victim's arm and pain and redness on the victim's left breast. The physical evidence strongly refuted Petitioner's defense of consent.

In sum, the facts strongly support the jury's verdict of CSC I. Given that the references to Petitioner's invocation of his right to silence were of limited duration and followed by the prosecutor's own acknowledgment of Petitioner's right to remain silent and have an attorney, Petitioner fails to demonstrate that any error "worked to his *actual* and substantial disadvantage." *Perkins*, 58 F.3d at 219.

c. <u>No Miscarriage of Justice</u>

In addition, Petitioner does not even allege that his procedural default should be excused under the miscarriage-of-justice exception. He wholly fails to argue, much less to show, that he is actually innocent and that it is more likely than not that, based on new reliable evidence, no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *House*, 547 U.S. at 536 (citing *Schlup*, 513 U.S. at 327).

For multiple reasons, therefore, Petitioner fails to overcome his procedural default.

3. <u>Failure on the Merits</u>

Further, even if procedural default did not bar's Petitioner's claim, the Court's conclusion that he cannot show actual prejudice would preclude granting Petitioner relief on the merits of the second ineffective-assistance-of-counsel claim. As earlier discussed, in order to

establish a claim of ineffective assistance of counsel, Petitioner must prove both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687. As a result, even if Petitioner could show that his attorney's performance was deficient in failing to object to the mentions of Petitioner's silence, Petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. In light of the overwhelming evidence against Petitioner, the brief mentions of his silence, in the context of the prosecutor's repeated acknowledgments of Petitioner's absolute right to remain silent, did not have an effect on the judgment.

For all of these reasons, Petitioner is not entitled to habeas relief on his second claim of ineffective assistance of counsel.

IV.    <u>Sentence Scoring</u>

Petitioner argues that the trial court incorrectly scored Offense Variables (OVs) 3 and 4 of the Michigan Sentencing Guidelines. Under OV 3, Petitioner was scored 10 points, based on a finding that the victim suffered bodily injury requiring medical treatment. Mich. Comp. Laws § 777.33(1)(b). The statute provides that, "[a]s used in this section, 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." Mich. Comp. Laws § 777.33(3). Under OV 4, points are scored for psychological injury to a victim. Mich. Comp. Laws § 777.34(1). Petitioner was scored 10 points because "serious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(a). Subsection 2 of OV 4 instructs the court to "[s]core 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." Mich. Comp. Laws § 777.34(2). Petitioner argues that he was

denied his rights under the Fourteenth Amendment by the mis-scoring of the sentencing guideline variables.

In reviewing Petitioner's claim, the court of appeals held that both variables had been correctly scored under Michigan law. The court therefore rejected Petitioner's second ground on appeal and upheld the sentence.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). A criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

To the extent that Petitioner argues that his sentence was improperly scored under Michigan law, his claim is not cognizable. The court of appeals found that the guidelines had been correctly applied. A state court's interpretation of Michigan sentencing law is binding on a federal court sitting on habeas review. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Thomas v.*

*Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Nevertheless, although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner's sentence of 15 to 50 years clearly is neither arbitrary nor shocking, especially given the potential life sentence that could have been imposed. *See* Mich. Comp. Laws § 750.520b(2)(a). Further, Petitioner does not even argue that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court should have either made different factual findings or

construed the sentencing guidelines differently. Such claims clearly fall far short of the sort of egregious circumstances implicating due process.

Petitioner appears to suggest, however, that, because he did not admit facts supporting the variables and because the jury did not find those facts beyond a reasonable doubt, the trial court was without authority to sentence him on those variables. Although Petitioner does not identify the legal basis for his argument, he appears to rely on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables []

23

that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines, making the guidelines advisory only. *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the required use of judge-found facts to increase mandatory minimum sentences. *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

In the instant case, Petitioner was sentenced on July 20, 2016, three years after *Alleyne* was decided. *Alleyne* therefore was clearly established at the time of Petitioner's sentence. In addition, the rule of *Alleyne* was applied in Petitioner's case, because Petitioner was sentenced nearly a year after *Lockridge*. As a result, at the time Petitioner was sentenced, the Michigan sentencing guidelines were not mandatory, but advisory only.

As the courts have recognized, purely advisory applications of the guidelines do not run afoul of the Sixth and Fourteenth Amendments. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge

to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)). Because Petitioner's sentence was imposed after the guidelines became advisory, and because the sentence was well within the statutory range, Petitioner cannot demonstrate that his sentence was unconstitutional.

For all of these reasons, the state-court's rejection of Petitioner's claim was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

## V.  Imposition of an Unconstitutional Late Fee

In his third ground for habeas relief, Petitioner contends that Mich. Comp. Laws § 600.4803 (which provides for the imposition of a late fee of 20% on any penalty or fee not paid within 56 days after it is due) is unconstitutional, because it subjects a class of people to more onerous penalties, simply based on the inability of class members to pay. The Michigan Court of Appeals declined to answer the question, because Petitioner failed to demonstrate that the trial court had imposed a late fee on him.

Petitioner is entitled to the writ of habeas corpus only if she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The essential purpose of the writ of habeas corpus is to free individuals from wrongful restraints upon their liberty. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The imposition of a fine or restitution is not a sufficient restraint on liberty to meet the "in custody" requirement of § 2254(a). *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) (interpreting the "in custody" requirement of 28 U.S.C. § 2255); *see also Barnickel v. United States*, 113 F. 3d 704, 706 (7th Cir.

1997); *Tinder v. Paula*, 725 F.2d 801, 805 (1st Cir. 1984); *Mullins v. Birkett*, No. 2:09-cv-12515, 2010 WL 764386, at *3 (E.D. Mich. Mar. 4, 2010). If the appropriate relief for the alleged error would be an amendment to the court's order of restitution or fines, rather than earlier release from custody, a writ of habeas corpus is inappropriate. *Mullins*, 2010 WL 764386, at *2 (citing *United States v. Zaragoza*, 16 F. Supp. 2d 1111, 1112 (N.D. Ind. 1998)); *see also United States v. Gianelli*, 543 F.3d 1178, 1184 n.7 (9th Cir. 2008) (stating that a federal prisoner "cannot present his claim for relief from [a] restitution order as a habeas petition because he is not seeking release from custody, and because review of restitution orders is not properly brought in a habeas petition"). Petitioner's third ground for habeas relief therefore is not cognizable on habeas corpus review, and couching the issue as a due process or equal protection claim does not render his claim reviewable in a habeas proceeding. *Flores v. Hickman*, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a

certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated:   February 20, 2019          /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE